**Lucy PENG–FEI CHANG**

v.

**UNIVERSITY OF RHODE ISLAND.**

**Diane SELEEN, et al.**

v.

**BOARD OF REGENTS, et al.**

Civ. A. Nos. 77–0070 S, 79–0087 S.

United States District Court,
D. Rhode Island.

Jan. 20, 1983.

---

**1204**

Abedon, Michaelson, Stanzler & Biener, Milton Stanzler, Lynette Labinger, Providence, R.I., for plaintiffs.

Adler, Pollock & Sheehan, John F. Bomster, Edward L. Maggiacomo, Michael Kelly, Nicholas Trott Long, Providence, R.I., for defendants.

## MEMORANDUM & ORDER

SELYA, District Judge.

These consolidated cases are presently before the Court on defendants' motion for partial summary judgment, filed September 29, 1982, and plaintiffs' objections thereto. Plaintiffs in the consolidated cases have asserted the existence of a widespread and invidious pattern and practice of sex discrimination which allegedly pervades all facets of faculty employment at the University of Rhode Island, including recruitment, hiring, entry level at the time of hiring, compensation, tenure, promotion, termination and contract non-renewal. A class of current and former women faculty members and applicants has been certified, although a motion to reconsider the class certification is currently pending before this Court. Defendants, in the instant motion, seek *brevis* adjudication in their favor anent the claims for class relief in the categories of compensation, promotion, tenure, termination and contract non-renewal.

In support of their motion for summary judgment, defendants have submitted the affidavit of Dr. Bernard R. Siskin, a statistician retained as an expert by defendants to analyze the University's employment practices over the past ten years. Dr. Siskin's study purportedly utilizes the statistical method known as "multiple regression analysis." On the basis of this assay, Dr. Siskin concludes that no statistical basis exists for the conclusion that women, as a class, have suffered discrimination at the University with respect to compensation, promotion or tenure.

In augmentation of the Siskin study, defendants have submitted the affidavit of Frank Newman, who has served as President of the University of Rhode Island since August of 1974. Dr. Newman avers that, since his appointment, "it has not been the

policy or practice of the University of Rhode Island to discriminate on the basis of sex with respect to ... employment of women faculty members at the University." On the basis of information and belief, Mr. Newman further asseverates that no discriminatory practices or policies have been in effect at the University since at least March of 1972.

Plaintiffs submitted the affidavit of Dr. Harriet Zellner as a part of their opposition to the instant motion. Dr. Zellner concludes that Dr. Siskin's study is "so incomplete and so flawed methodologically as to provide no statistical basis upon which to form any conclusions with respect to the charges [made by plaintiffs]." Among other things, Dr. Fellner's affidavit points out that Dr. Siskin: (i) analyzed faculty salary for only the final year of the period encompassing all academic years from 1971–72 to 1981–82; (ii) ignored any discrimination in placement or salary at the time of hiring; and (iii) failed to count as having been denied promotion any faculty member granted promotion by 1981, regardless of how many times that person was previously denied promotion. Both Dr. Siskin and Dr. Zellner are duly credentialed individuals who would, from what presently appears of record, be permitted to testify as experts.

█ Plaintiffs contend that they need not rebut Dr. Newman's affidavit because it is quintessentially conclusory and made on information and belief. *See Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); Fed.R.Civ.P. 56(e). Having taken this position, plaintiffs, in the exercise of commendable barristerial caution, have nevertheless submitted documents indicating that in November 1977, Dr. Newman directed the formation of a university-wide Salary Review Committee, the mandate of which was to make recommendations to eliminate any gender-based inequities in faculty salaries. These recommendations were forthcoming in due course, and were thereupon endorsed by Dr. Newman and implemented by the University, resulting in retroactive wage increases

for forty percent of the then-incumbent female faculty members. Plaintiffs have also submitted a collage of the University's affirmative action reports and Equal Employment Opportunity plans for the years 1972 through 1982, each of which can be read as indicating the University's recognition and-or admission that women were and historically have been underrepresented on the University's faculty and-or that stipends for women faculty were unduly concentrated at the lower end of the faculty salary scale.

Under Rule 56(c), motions for summary judgment are to be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). In determining whether summary judgment is appropriate, the Court must view the record in the light most favorable to the party opposing the motion, and must indulge all reasonable inferences favorable to that party. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Hosemann v. Technical Materials, Inc.,* 554 F.Supp. 659, 664 (D.R.I. 1982). Doubt must in all events be resolved against the movant.

█ The affidavit and supporting materials submitted by the plaintiffs in the case at bar make it abundantly clear that there are genuine issues of fact for trial. In the judgment of the Court, the defendants have palpably failed to meet their burden of demonstrating affirmatively that there are no material questions of fact. Litigable controversy apparently still attaches to virtually every relevant issue raised by the pleadings; any attempt, on the present record, at summary disposition of the important issues raised in this action would seem plainly overzealous. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Mack v. Cape*

*Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir.1977).

 While the progression of civilization from the quipu to the analog computer has added measurably to the store of available computational knowledge, even integrated micro-circuitry and silicone chips know some bounds. Although statistical analyses serve an important role in employment discrimination cases, they are neither irrefutable nor necessarily definitive. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 339–40, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396 (1977). Death and taxes, arguably, may be certain; but the colligation reached by application of the electronic dactylonomy of the statistical surveyor, and the conclusions suggested thereby, are not. Such analyses are, at best, sophisticated numerative generalizations, and they may, like other forms of generically-reliable evidence, be rebutted. *Id.* at 340, 97 S.Ct. at 1856. The Court would be remiss in granting defendants' motion for summary judgment based solely on Dr. Siskin's statistical indices (even in the absence of Dr. Zellner's critique thereof) without subjecting those findings to the in-depth scrutiny given other types of evidence at a trial on the merits.

Dr. Newman's affidavit adds nothing to the defendants' motion because, to the extent it is not conclusory, it is in material part bottomed on facts not within his personal knowledge and does not comply with Rule 56(c). *Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950); 10 Wright & Miller, *Federal Practice & Procedure* § 2738 at 695–96 (1973).

The summary judgment standard has not been met by these movants. The plaintiffs, as the record now stands, ought not to be deprived of the opportunity to test at trial the propriety of the employment practices which the University has utilized in marshalling its faculty.

Accordingly, it is hereby ORDERED:

That defendants' motion for summary judgment dated September 29, 1982 may be, and the same hereby is, denied.