Thomasina MACK, Plaintiff, Appellant,

v.

The GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC., Defendant, Appellee.

No. 88–1988.

United States Court of Appeals, First Circuit.

Heard Feb. 8, 1989.

Decided March 28, 1989.

John G. Bagley with whom Egan, Flanagan and Egan, P.C., Springfield, Mass., was on brief, for plaintiff, appellant.

Richard P. Ward with whom David J. Kerman, Robert B. Gordon and Ropes & Gray, Boston, Mass., were on brief, for defendant, appellee.

Before BREYER, ALDRICH and SELYA, Circuit Judges.

SELYA, Circuit Judge.

On October 28, 1983, plaintiff-appellant Thomasina Mack, a black woman, sued her employer, Great Atlantic and Pacific Tea Company (A & P), charging race and sex discrimination. The district court eventually entered summary judgment in defendant's favor. We affirm.

## I. BACKGROUND

Although the parties heatedly dispute the fairness—or lack of same—with which Mack was treated during her employment, the facts central to our inquiry are largely uncontroverted. Plaintiff began working for A & P in 1971. Except for a brief stint in 1974 as a head cashier—a position which she resigned—she toiled for the most part as a grocery/produce clerk (GPC) in Springfield, Massachusetts. GPC positions were full-time and within the ambit of A & P's collective bargaining agreements.

In 1981, A & P shrank the number of GPC positions within its divisional work force. Pursuant to the then-current union pact, Mack was "bumped" from her job by a more senior employee. When A & P proposed to transfer her (as a GPC) to a store some distance away, she complained to the Massachusetts Commission Against Discrimination (MCAD). The gist of her remonstrance was that A & P had failed to promote her, instead elevating a less senior white male within her job classification to a higher-level job roughly one month before the reduction in force took place. Mack attributed the maneuver to the fact that she was black and/or female. In December 1981, the parties settled the dispute: the case was dismissed, A & P retransferred Mack to a GPC slot in Springfield, and the company agreed that she would be fairly considered for future promotions.

All went well until November 1982, when more layoffs occurred. Mack was again supplanted by a more senior employee. This time, she remained in Springfield, but in a part-time status, with concomitant diminution of pay, benefits and job security. Unhappy with her lot, she filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in Janu-

ary 1983. As amplified by her opposition to the defendant's summary judgment motion, Mack's complaint apparently centered around the allegation that, in the year or so prior to the latest layoffs, three white males, all junior to Mack in length of service, had been promoted from GPC positions to jobs unaffected by the reduction in force. The EEOC referred the claim to MCAD, as the appropriate state agency. *See* 42 U.S.C. § 2000e–5(d) (1982).

The administrative proceedings were inconclusive and plaintiff sued in federal court. She claimed that she had unfairly been left at the checkout counter while white males with less seniority were routinely promoted. To truncate a tedious tale, defendant moved for summary judgment several years later on the ground that the suit was untimely under Title VII, 42 U.S.C. § 2000e *et seq.* It contended that the three promotions criticized by plaintiff had all occurred outside of the applicable limitations period, and that, in any event, its personnel policies and practices were gender-blind and racially neutral. The district court agreed, ruling that Mack had failed to bring suit in a seasonable fashion. Plaintiff appeals.

## II. THE APPLICABLE LEGAL STANDARD

Summary judgment is warranted only if: the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Though the movant's burden is heavy,[1] an opponent may not rest upon her laurels (or her pleadings), but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of

the truth which a factfinder must resolve at an ensuing trial. *See Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed. 2d 754 (1976). As the Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted).

In assessing the parties' proffers under the rule, the district judge "must eye all reasonable inferences in the light most congenial to the nonmovant." *Greenberg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir.1987). If he grants the motion, our review is plenary: we must reverse if we find that issues of fact which were adequately raised below need to be resolved before the related legal issues can be decided. *Id.; see also Lipsett v. University of Puerto Rico*, 864 F.2d 881, 895 (1st Cir.1988); *Emery v. Merrimack Valley Wood Products, Inc.*, 701 F.2d 985, 986 (1st Cir.1983). Preclusory time bars are appropriately examined under Rule 56 if the relevant facts are sufficiently clear. *See, e.g., Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982); *Kussmaul v. Peters Constr. Co.*, 563 F.Supp. 91, 92 (D.R.I.1983).

To sculpt the summary judgment model to the dimensions of this case, we look to Title VII. In a "deferral state" such as Massachusetts, the statute requires a claimant to file administrative charges within 240 days of the challenged conduct. *See* 42 U.S.C. § 2000e–5(c), (e); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n. 16, 100 S.Ct. 2486, 2491 n. 16, 65 L.Ed.2d 532 (1980); *Isaac v. Harvard University*, 769 F.2d 817, 818–19 (1st Cir.1985). Thus, to escape the swing of the summary judgment axe, Mack had the burden of showing

---

1. As we recently wrote: "Notwithstanding that recent caselaw has invited greater use of Rule 56, the test remains a fairly rigorous one."

*Greenberg v. Puerto Rico Maritime Shipping Auth.*, 835 F.2d 932, 934 (1st Cir.1987).

either (1) that a discriminatory act occurred within 240 days next preceding her administrative filing (effectuated on January 21, 1983), or (2) that there were facts extant which, if believed, would suffice to toll the prescriptive period and excuse the delay.

## III. TIMELINESS

### A. *The 1982 Reduction in Force.*

■ Through counsel, appellant conceded at oral argument that she could identify no discriminatory promotion occurring within the 240-day period (that is, on or after May 26, 1982). She pinned her hopes instead on the notion that her demotion to a part-time role in November 1982 was itself a discriminatory act, thereby rendering her claim timeous. Mack's thesis runs along the following lines: Gary Bassett, a GPC who had less seniority than she did, retained his full-time status during and after the 1982 layoffs; because Bassett was junior to her, he should have been "bumped" in her stead; retaining him in November 1982 constituted a discriminatory act within the limitations period. Withal, there is a large fly in the ointment: having canvassed the record with care, we can find no "significantly probative" evidence, *Anderson,* 477 U.S. at 249-50, 106 S.Ct. at 2510-11, to create a genuine issue of material fact on this point.

A & P tendered substantial proof that, in November 1982, Bassett was not a GPC at all. By then, he was employed in a different job category, first clerk (FC). The record is clear that the positions were separate and distinct; if Mack was in one category and Bassett in the other, defendant's failure to treat them on a par was mandated by the collective bargaining agreement and could not constitute actionable discrimination. Accordingly, plaintiff's ability to defeat summary judgment on this claim was dependent upon the existence of adequate evidence that, in late 1982, Bassett, like Mack, was a GPC. In response to such persuasive data as Bassett's sworn denial and the testimony of the personnel director

that Bassett had been promoted to a vacant FC position effective April 7, 1982, Mack could point only to an "employment card" which mysteriously failed to record Bassett's promotion. We have examined the card. It is mostly handwritten, barely decipherable, and seems at best an informal record. It does not contradict the fact of the promotion, but is silent on the subject. We do not think that the incompleteness of the card, standing alone and in the face of powerful evidence to the contrary, suffices to raise a *genuine* issue of fact as to Bassett's employment status.

Because there is no sufficiently probative evidence that other comparably credentialed GPCs were treated more favorably than plaintiff when A & P reduced its staff in November 1982,[2] *Brevis* disposition of this claim was proper.

### B. *Continuing Violation Theory.*

Mack next attempts to establish timeliness by arguing that A & P has committed a "continuing violation." In any such analysis, it is imperative that we distinguish between the occurrence of a discriminatory act and the later effects of that act. *See, e.g., Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503-04, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). That is to say, the life of plaintiff's cause of action is not prolonged merely because she would not have been "riffed" in 1982 had she been promoted earlier. As the Court has taught, "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (per curiam) (emphasis in original). If there was disparate treatment, it took place when A & P failed to promote plaintiff to a suitable opening.

---

**2.** It is, we believe, not without significance that the four GPCs in plaintiff's region who retained full-time status in the wake of the November 1982 layoffs all had much greater seniority with the company than did plaintiff. By the same token, three other white male GPCs, each of whom had worked at A & P considerably longer than plaintiff, were treated exactly as she was.

**1. *Serial Violations.*** What, then, is meant by the term "continuing violation"? In one incarnation, the theory recognizes that some acts are imbricated, *i.e.,* they involve an interlinked succession of related events or a fully-integrated course of conduct. Although the limitations clock generally starts with the commission of a discriminatory act, a true "continuing violation" rewinds the clock for each discriminatory episode along the way. *See Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984); *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1018 (1st Cir.1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980); B. Schlei & P. Grossman, *Employment Discrimination Law,* 235 (2d ed. Supp.1987). Thus, if the later violations in the series are within the prescriptive period, an employee may pursue them despite the fact that earlier acts, forming part and parcel of the same pattern, have grown stale. Applying this reasoning, we held in *Cajigas v. Banco de Ponce,* 741 F.2d 464 (1st Cir.1984), that although the primary discriminatory act of which plaintiff complained (a gender-biased promotion) was time-barred, her action was nevertheless "timely with respect to at least the alleged discriminatory refusal [subsequently] to promote plaintiff to an available executive position for which she was qualified" and as to which the limitations period remained open. *Id.* at 470.

The problem with Mack's reliance on *Cajigas* is not doctrinal, but factual; plaintiff's situation simply does not fit within the stipulated framework. In *Cajigas,* there was evidence "that positions as manager were open [during the limitations period] when plaintiff continued to press for promotion." *Id.* In contrast, Mack offers no specific facts to indicate that any jobs to which she sought promotion and for which she was qualified, *e.g.,* FC positions, became vacant or available during the limitations period. In short, serial violations or no, plaintiff retained the burden of demonstrating that *some* discriminatory act transpired within the appropriate time frame. Her inability to pinpoint even a single opportunity which was improperly foreclosed to her on or after May 26, 1982 devastates her argument.

**2. *Systemic Violations.*** Plaintiff also urges that A & P's entire promotional system was unlawful. This, she theorizes, itself comprised a "continuing violation," albeit of a somewhat different stripe, rendering it unnecessary to identify any single act of discrimination within the limitations period. Such an argument is not without theoretical support; we have recognized that if a Title VII violation occurs in the wake of some continuing policy, itself illegal, then the law does not bar a suit aimed at the employer's dogged insistence upon that policy within the prescriptive period. *See Johnson v. General Electric Co.,* 840 F.2d 132, 136–37 & n. 5 (1st Cir. 1988); *Velazquez,* 736 F.2d at 833; *see also Rich v. Marietta,* 522 F.2d 333, 348 (10th Cir.1975) (where entire promotional system challenged as operating to hold plaintiffs in lower echelons continually, the limitations period "looms inconsequential"); Schlei & Grossman, *supra,* at 235–36. In other words, if both discrimination and injury are ongoing, the limitations clock does not begin to tick until the invidious conduct ends.

Before plunging into this copse, we pause at the edge to note that the complaint which Mack filed in district court did not appear to challenge defendant's overall promotional system. Plaintiff's pleaded concern seemed to be with how *she* was treated. Rather than being a case where individual acts of discrimination against a plaintiff were cited primarily as "evidence [of] a *policy* of discrimination," *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 760 (9th Cir.1980) (emphasis in original), the reverse appears true; as the district court observed, Mack seemingly "challenges defendant's refusal to promote *her* and cites the statistics involving other A & P employees merely as evidence of discrimination against her." (Emphasis in original.) A litigant has the duty to spell out her theories clearly and distinctly before the nisi prius court, on pain of preclusion. *Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840

F.2d 985, 990 (1st Cir.1988); *Miller v. ITT*, 755 F.2d 20, 25 (2d Cir.) (barring resort to afterthought invocation of continuing violation doctrine), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985); *but cf. Reed*, 613 F.2d at 759 (civil rights complaint should not be read narrowly to foreclose continuing violation approach). In this instance, we give plaintiff the benefit of the doubt and assume that the concept was properly pled below. But let this discussion serve an aposematic purpose: the bar stands forewarned that we will be slow to extend such largesse in the future.

■ Having determined that we will consider Mack's asseveration, the record reveals that nothing turns on it. Mack presented no evidence to the district court sufficient to show that a discriminatory promotional policy was in effect during the statutory period. Her effort to have us infer such a policy from statistics showing a low percentage of blacks and females in upper-level positions at A & P leaves too much to be desired. For one thing, the evidence is incomplete; we cannot tell, for example, the percentage of black or women applicants who were promoted or rejected for promotion. For another thing, we are left in the dark as to whether—and how—personnel and recruitment practices varied over time. Then, too, plaintiff proffered no expert testimony or other insights to show the probativeness of the figures, their likely statistical significance, or the inferences which might properly be drawn from them. For these reasons, the naked numbers, standing unadorned and unexplained, lacked sufficient convictive force to derail appellee's summary judgment initiative. *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943–44 (6th Cir.1987) (jury verdict for employee reversed; plaintiff must place statistics in a relevant context and make them meaningful); *Fudge v. City of Providence Fire Dep't*, 766 F.2d 650, 658 (1st Cir.1985) (where data base narrow, "the better approach is for the courts to require a showing that the disparity is statistically significant, or unlikely to have occurred by chance, applying basic statistical tests as the method of proof"); *Pace v. Southern Ry. System*, 701 F.2d 1383, 1388–89 (11th Cir.) (discussing proponent's duty to provide supporting information to render statistics probative of claimed discrimination), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *cf. Chang v. University of Rhode Island*, 554 F.Supp. 1203, 1206 (D.R.I.1983) (death and taxes, arguably, may be certain; conclusions drawn from statistical evidence in discrimination cases rarely are).

Mack's statistical proffer was inadequate for another reason as well. Even if admissible under a disparate impact theory, to assist plaintiff in establishing a prima facie case of discrimination,[3] *see, e.g., Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1014 (1st Cir.1984), plaintiff would nevertheless be charged with "identify[ing] the facially neutral practice or policy which gives rise to the alleged discriminatory impact [and] showing a causal relationship between the challenged employment practice and the alleged discriminatory impact." Schlei & Grossman, *supra*, at 312–13 (citations omitted); *see also Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 73–74 n. 8 (1st Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). She offered not a shred of evidence on this score. Mack's mere citation of employment statistics and her general references to some vague, undefined policy of discrimination are not, after nearly five years' worth of discovery, sufficient to make out a Rule 56 showing that a discernible discriminatory policy was in effect, and injured her, during the limitations period.

### C. *Equitable Tolling.*

Appellant has one last bundle in her timeliness cart. She asserts, correctly, that the 240–day limit imposed by Title VII is "subject to waiver, estoppel and equitable tolling." *Zipes v. TWA, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed. 2d 234 (1982) (footnote omitted). Mack

---

**3.** We note that plaintiff brought the present suit not on a disparate impact theory, or as a class action, but in respect to what she envisioned to be disparate treatment. Thus, it is difficult to visualize how the data would have been admissible in this case.

says that the limitations period was tolled in her case because A & P wrongfully concealed the very facts which would have supported a discrimination charge.[4]

■ We hew to a "narrow view" of equitable exceptions to Title VII limitations periods; an exception for concealment is "appropriate only where the employer actively misled the employee...." *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 71 (1st Cir.1982). This approach, we believe, mirrors the weight of reasoned authority. *See, e.g., Johnson v. United States Postal Service*, 861 F.2d 1475, 1481 (10th Cir.1988) (Title VII limitation period will be tolled only for "active deception"); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 108–111 & n. 12 (2d Cir.1978) (similar); Schlei & Grossman, *supra*, at 237 (citing other cases). The case at bar cannot pass muster under this exacting standard.

■ The only conduct which Mack attributes to A & P that could in any sense be termed "concealment" is that the company did not post job openings or notify her of promotional opportunities. But A & P had no duty to act in these respects. Nothing in the 1981 settlement agreement required posting or notification. It was not the company's practice to post vacancies—and plaintiff knew as much. News of openings circulated partially by word of mouth, but there was no evidence to suggest that the employer lied to Mack, or systematically and surreptitiously tipped other employees, white males in particular, to promotional opportunities. In addition, A & P regularly sent relevant information anent vacancies to the union. Mack was a union member and the data was available to her. If she never bothered to check with the union, that was scarcely defendant's fault. The company's "failures"—the absence of posting or personal notice—simply did not amount to active concealment sufficient to toll the limitations period.[5]

## IV. BREACH OF 1981 AGREEMENT

■ Plaintiff argues that, even if defendant was entitled to *brevis* disposition on her new claim, the suit should still go forward in respect to whether A & P lived up to the settlement agreement entered as a result of the 1981 MCAD claim. The argument, we think, has been forfeited.

The complaint asserted no claim for breach of the 1981 settlement agreement. The cross-filings anent the motion for summary judgment suggested no such claim. It was not until after the district court granted defendant's motion for summary judgment that plaintiff, in a motion for reconsideration, switched gears and pointed

---

**4.** At certain points, Mack also contended that her tardiness should be excused because (1) A & P received adequate notice of the charges as far back as 1981 (when appellant filed her original MCAD claim), and (2) appellant did not learn of the allegedly discriminatory promotions until the limitations period had elapsed. These initiatives require little comment. The 1981 charge dealt with an earlier "lost" promotion during an earlier reduction in force. The dispute was settled. Mack has neither attempted to renounce the settlement nor asked the agency to reopen the matter. We categorically reject the implication that once an employee has made a charge of discriminatory conduct, the employer is open to future charges by the same employee, based on different events in different temporal settings, without limit of time. As to appellant's claimed benightedness, that is plainly not enough; knowledge of the vacancies, and the ensuing promotions, was there to be obtained. If we are not prepared to read the filing deadlines entirely out of the statute, subjective ignorance, without more, cannot be a valid excuse.

Mack has failed to indicate any circumstances sufficient to justify relief based on her asserted lack of knowledge.

**5.** The caselaw which Mack brandishes is distinguishable. In *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir.1975), it was alleged that the employer "actively sought to mislead" plaintiff by lying to her. *Id.* at 930. In determining tolling to be possible, the Fifth Circuit emphasized the "giving of misleading or false information [by the employer] to the victim." *Id.* at 931. Here, unlike in *Reeb*, A & P was not shown to have made any misrepresentation. In *Cocke v. Merrill Lynch & Co.*, 817 F.2d 1559 (11th Cir.1987), plaintiff was "led to believe the employer [was] trying to place him in another job." *Id.* at 1561–62. In contrast, there are no facts in this record to indicate that A & P made apocryphal promises to plaintiff, or that she refrained from pursuing her rights until the limitations period passed because her employer was casting false rays of hope.

to breach of the agreement as a basis for her suit. That motion was filed too late.

Mack did not request reconsideration until July 29, 1988—some four weeks after the adverse judgment had been entered. "It is settled law in this circuit that a motion which asks the court to modify its earlier disposition of a case solely because of an ostensibly erroneous legal result is brought under Fed.R.Civ.P. 59(e)." *Rodriquez–Antuna v. Chase Manhattan Bank*, 871 F.2d 1, 2 (1st Cir.1989); *see also In re Sun Pipe Line Co.*, 831 F.2d 22, 24 (1st Cir.1987) (similar), *cert. denied*, — U.S. ——, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988); *Silk v. Sandoval*, 435 F.2d 1266, 1267–68 (1st Cir.), *cert. denied*, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971). The rule contains a time limit: motions thereunder must "be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). Plaintiff did not observe this deadline. The district court was, therefore, warranted in denying the reconsideration motion as untimely. *See Rodriquez–Antuna*, 871 F.2d at 3; *Labuquen v. Carlin*, 792 F.2d 708, 709 (7th Cir.1986) (per curiam). And to the extent that the motion to reconsider might be construed as a motion to amend plaintiff's complaint, Fed.R.Civ.P. 15, it was within the court's discretion to refuse the amendment, given the age and posture of the litigation. *See, e.g., James v. Watt*, 716 F.2d 71, 77–78 (1st Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984).

## V. DISCOVERY RULINGS

Plaintiff essays a parting shot. She contends that the district court improperly restricted her discovery efforts, thereby precluding her from unearthing evidence which might have defeated the summary judgment motion. We set the stage.

The parties made extensive use of available pretrial discovery devices. After objections had been sustained to certain of plaintiff's interrogatories, she filed an amended set. A & P objected to two of the revised questions as irrelevant and burdensome.[6] Appellant moved to compel answers. The magistrate denied the motion because "the interrogator[ies were] overbroad and the burden on the defendant in answering would outweigh significantly any [corresponding] benefit to plaintiff's case." The district judge approved the order. Mack tells us this was error. We disagree.

■ Circumstances warranting appellate intervention in garden-variety pretrial discovery are infrequent. As we have recently written:

> Trial courts enjoy a broad measure of discretion in managing pretrial affairs, including the conduct of discovery. Decisions regarding the scope of discovery ... are ordinarily left to the informed judgment of the district judge.

*In re Recticel Foam Corp.*, 859 F.2d 1000, 1006 (1st Cir.1988); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1505 (11th Cir.1985) ("trial court has wide discretion in determining the scope and effect of discovery"), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2176 (1970). We will intervene in such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party. *Accord Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 n. 1 (9th

---

**6.** The interrogatories at issue requested A & P to:

9. List by job title, job location, and date each permanent vacancy that existed within each job classification or pay group or category in the grocery and produce departments listed in Article 12 of the Collective Bargaining Agreement(s) applicable to the plaintiff's employment from January 1, 1980 through December 31, 1983.

10. State the exact date on which each job vacancy listed in your Answer to the preceding Interrogatory was filled, whether such vacancy was filled by promotion, new hire, person returning from layoff, or otherwise (specify), and the name, race, years of A & P service, age and last known address of the person who filled such vacancy.

Cir.1977); *see also* Wright & Miller, *supra,* § 2176 (similar); *cf. Independent Oil & Chem. Workers v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988) (discussing test for abuse of discretion). Mack has demonstrated neither clear error nor likely prejudice.

The Civil Rules were amended in 1983 to increase the district courts' power to supervise discovery and curb excesses. Specifically, Rule 26(b)(1) was added to deal with the problem of over-discovery. *See* Fed.R.Civ.P. 26 advisory committee's note (1983 amendments). The rule, applicable in this instance, provides in part that the court shall restrict discovery which "is unduly burdensome or expensive, taking into account the needs of the case...." Fed.R.Civ.P. 26(b)(1). The district court made such a determination here. Given the context of the litigation, we believe the court had ample justification for deciding that the disputed interrogatories were overly broad with respect to time frame, job classifications, and geographic area. After all, Mack sought data for a 4–year period when a lesser time would plainly have sufficed; she inquired as to nine different job classifications, several of which were clearly immaterial to the case (indeed, Mack had already held, or did not desire to transfer to, at least four, and perhaps five, of these positions); and her request extended to 62 stores, a total that seems unreasonable given (1) Mack's unwillingness to accept a transfer outside of the Springfield area, and (2) the decentralized nature of managerial decisionmaking in appellee's supermarkets.[7]

Let us be perfectly clear. For the most part, there are no barbed-wire fences marking the precise boundaries of pretrial discovery. Management of discovery is a largely empirical exercise, requiring judges to balance the inquirer's right to know against the responder's right to be free from unwarranted intrusions, and then to factor in systemic concerns. Limits can best be set case by case. Although judicial discretion is not unrestrained—courts must apply a set of general principles, *see, e.g.,* Fed.R.Civ.P. 26—parties have a correlative obligation to tailor interrogatories to suit the particular exigencies of the litigation. They ought not to be permitted to use broadswords where scalpels will suffice, nor to undertake wholly exploratory operations in the vague hope that something helpful will turn up. And above all, the trier must be accorded considerable latitude in gauging the extent of a party's compliance with these precepts. Sticking the appellate nose too readily into the district court's scope-of-discovery tent is, we think, a recipe for disaster.

Having carefully read the entire record, it seems to us that the interrogatories at best fell into, and quite probably beyond, the gray area at the discovery margin. The court could possibly have allowed them, but it was certainly free to call the shot the other way. Requiring A & P to cull through personnel records of hundreds of employees, at scattered sites in differing labor markets, over a 4–year period, could plausibly have been viewed as "unduly burdensome or expensive, taking into account the needs of the case...." Fed.R.Civ.P. 26(b)(1). In this instance, the judge made a reasonable reconciliation of the centrifugal and centripetal forces at work in the discovery process. That is all we—or the litigants—have a right to expect. No abuse of discretion has been shown.

## VI. CONCLUSION

We need go no further. Having taken stock of plaintiff's case, we find the shelves to be bare. The district court appropriately concluded that, as to timeliness, no genuine issue of material fact existed. The court did not err when entering judgment in defendant's favor as a matter of law. And,

---

**7.** The sweep of the interrogatories is apparent when one looks at a map of southern New England. Defendant was called upon to collect data as to events at loci as far removed from Springfield as Provincetown, Massachusetts (209 miles away, by road) and Stamford, Connecticut (107 miles distant). Well over 25% of the 62 stores covered by the interrogatories were situated more than 100 driving miles from Springfield. And three of the markets were located on islands off the eastern coast of Massachusetts.

plaintiff has not demonstrated that any pretrial discovery rulings merit reversal.

*Affirmed.*