Leila Frances **COLON** and Juan Enrique **Rodriguez, on behalf of their minor son Eric Rodriguez Frances, Plaintiff,**

v.

Dr. Efrain **RAMIREZ, Dr. Jose R. Alvara-do, San Juan Municipal Hospital, Municipality of San Juan and John Doe, Defendants.**

Civil No. 93–1282(JP).

United States District Court, D. Puerto Rico.

Jan. 24, 1996.

David Efrón, Río Piedras, P.R., for Plaintiff.

José A. Rey Díaz, Santurce, P.R., Pedro J. Pérez Nieves, Río Piedras, P.R., for Defendants.

### *OPINION AND ORDER*

PIERAS, District Judge.

The Court has before it the Motion for Summary Judgment filed by defendants San Juan Municipal Hospital and Drs. Efraín Ramírez Torres and José Alvarado (docket No. 38), plaintiff's Opposition (docket No. 40), defendants' Reply to Plaintiff's Opposition (docket No. 46) and plaintiff's Surreply (docket No. 47). For the reasons set forth below, defendants' Motion for Summary Judgment is hereby **GRANTED.**

## I. INTRODUCTION

Plaintiff is a minor who is alleged to be a citizen of Florida. Defendants are the Municipality of San Juan, a hospital owned and administered by the Municipality, and two doctors employed by the hospital. Plaintiff's Complaint alleges that on March 3, 1975, acting with "reckless disregard" and "delib-

erate indifference" for the rights of the plaintiff and his mother, one of the defendant doctors (i) induced labor in order to deliver a half dozen babies, including plaintiff, "en masse" and (ii) delivered plaintiff using Simpson forceps. According to plaintiff, the doctors ignored pleas from plaintiff's mother that her baby was to be delivered by caesarean section and did not conduct tests that would have shown that she was incapable of giving birth vaginally. The Complaint states that plaintiff suffered an array of injuries due to defendants' "grossly negligent acts and omissions," including spastic quadriplegia with athetosis, cerebral palsy and psychomotor retardation.

Plaintiff alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1343 for deprivation of civil rights protected under 42 U.S.C. § 1983 and pursuant to 28 U.S.C. § 1332 (diversity of citizenship) for negligence. In their motion requesting summary judgment, defendants assert that plaintiff has failed to state a cause of action under Section 1983. Alternately, defendants argue that even if plaintiff has stated a cause of action under Section 1983, defendants are immune since the constitutional right at issue was not clearly established in 1975. Defendants further assert that plaintiff's negligence cause of action against the defendant doctors is barred by an absolute immunity established under Puerto Rico law and that his negligence action against the Municipality is barred by his failure to notify the Municipality within ninety days of learning of his damages, as required by local law.

## II. UNCONTESTED FACTS

The parties do not controvert the following facts. *See* Initial Scheduling Conference Order (docket No. 34), defendants' Motion for Summary Judgment, Statement of Uncontested Facts (docket No. 38), plaintiff's Opposition, Statement of Contested Facts (docket No. 40).

1. Mrs. Leila Frances Colón was 27 years old at the time she gave birth to Eric Rodríguez Frances.

2. Mrs. Frances Colón went to the San Juan Municipal Hospital, which is owned and operated by the Municipality of San Juan, on March 3, 1975, in order to give birth to minor plaintiff.

3. On March 3, 1975, Dr. Efraín Ramírez was an employee of the San Juan Municipal Hospital and of the Municipality of San Juan and occupied the position of Resident Doctor.

4. On March 3, 1975, Dr. José Alvarado was an employee of the San Juan Municipal Hospital and of the Municipality of San Juan and occupied the position of Attending Physician.

5. On March 3, 1975, Dr. Alvarado was working in the emergency room of the San Juan Municipal Hospital.

6. Dr. Alvarado admitted Mrs. Leila Frances Colón to the San Juan Municipal Hospital on March 3, 1975, at 8:30 a.m. Dr. Alvarado delivered the plaintiff later that same day.[1]

7. Dr. Alvarado did not perform a caesarean section on Mrs. Frances Colón; the baby was delivered vaginally.

8. Plaintiff was born on March 3, 1975, and the parents are Mrs. Leila Frances Colón and Mr. Juan Enrique Rodríguez.

9. The medical records reflect that the plaintiff was born in "poor" condition.

10. Eleven days after birth, plaintiff's medical records reflect that he had suffered severe perinatal asphyxia.

11. Neither plaintiff nor his parents sent any written notification of a claim to the Municipality of San Juan within ninety days following March 3, 1975.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

1. While both parties agree that Dr. Alvarado delivered the plaintiff, his medical record at birth nevertheless states that Dr. Ramírez performed the delivery.

moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988).

■ Summary judgment is appropriate where, after drawing all reasonable· inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co., Inc.,* 814 F.2d 798, 804 (1st Cir.1987). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

■ The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First Nat. Bank of Ariz. v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

## IV. CAUSE OF ACTION UNDER SECTION 1983

Defendants allege that there is no cognizable cause of action under 42 U.S.C. § 1983 for several reasons. Their first argument is that plaintiff was not a "person" or "citizen" entitled to constitutional protection at the time of the alleged constitutional deprivation because he was still *in utero.* Defendants also assert that there is no general constitutional right to adequate medical treatment and/or bodily integrity and that the cases cited by plaintiff only recognize such rights in limited circumstances not present in this case. Further, defendants allege that even assuming plaintiff has identified a cognizable constitutional right, that right was not clearly established in 1975 and they did not act with the degree of culpability required by Section 1983. Finally, defendants cite *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for the proposition that the Municipality of San Juan cannot be held liable for the doctors' actions because the alleged constitutional violations were not committed pursuant to official policy.

Plaintiff counters that defendants violated his fundamental right under the Fourteenth Amendment to bodily integrity and that such right was clearly established in 1975. Alternately, plaintiff cites *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), for the proposition that he need not identify a specific liberty or property interest protected by the due process clause because the state's conduct in this case "shocks the conscience." While acknowledging that simple negligence is inadequate to state a claim under Section 1983, plaintiff alleges that defendants acted in this case with "recklessness," or "callous indifference," and that such states of mind are sufficient to state a claim under Section 1983. As to the Municipality's liability, plaintiff claims that the doctors established municipal policy with respect to the decision whether to deliver plaintiff vaginally or by caesarean section, thereby rendering the Municipality liable.

■ Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983. The two essential elements of a Section 1983 claim

are: 1) conduct committed by a person acting under color of state law; and 2) deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. It is with respect to the latter of these two elements that plaintiff's claim fails. Plaintiff's due process claim is substantive, not procedural. The Supreme Court has enunciated two alternative theories whereby a plaintiff may prove violation of his right to substantive due process. *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir. 1991); *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991). First, the plaintiff may demonstrate violation of an identified liberty or property interest protected by the due process clause. *Id.* Plaintiffs unable to prevail under this theory may still succeed if they can show state conduct that "shocks the conscience." *Id.* (quoting *Rochin v. Cal.,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952)). Plaintiff's claim fails under both theories.

■ We have reviewed the case law cited by the parties and can identify no general liberty interest in bodily integrity or adequate medical treatment. The cases plaintiff cites in support of his proposition that defendants violated his constitutional right to bodily integrity involve persons subjected to dangerous and unwanted procedures while in State custody or while their personal liberty had been restrained by the State. *See Clark v. Taylor,* 710 F.2d 4 (1st Cir.1983) (prison inmate exposed to carcinogenic substance); *Screws v. U.S.,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (involving citizen of Georgia beat to death while in police custody); *Rochin v. Cal.,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (police illegally entered defendant's home and arrested him, then took him to hospital and ordered doctors to pump his stomach to obtain evidence of drugs). In *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which plaintiff claims involved the unreasonable extraction of a blood sample, the Supreme Court actually upheld the taking of the blood sample against attacks based on the Due Process Clause, the privilege against self-incrimination, the right to counsel, and the right to be free of unreasonable searches and seizures. This Court finds no support for the proposition that the Fourteenth Amendment creates a general liberty interest in bodily integrity that protects individuals from state actors who perform unwanted acts on their person.

A line of Supreme Court cases holds that the Constitution imposes upon the State affirmative duties of care and protection, including adequate medical care, with respect to particular individuals. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (Eighth Amendment's prohibition against cruel and unusual punishment requires State to provide adequate medical care to incarcerated prisoners); *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (substantive due process requires State to provide involuntarily committed mental patients with services necessary to ensure they are reasonably safe from themselves and others). However, these cases involve situations where the State takes a person into its custody and holds him there against his will.

The Supreme Court elucidated this line of precedent in *DeShaney v. Winnebago County Dep't of Social Serv.,* 489 U.S. 189, 198–200, 109 S.Ct. 998, 1005–1006, 103 L.Ed.2d 249 (1989). Randy DeShaney physically abused his son Joshua repeatedly. In March of 1984, Randy beat Joshua into a coma, rendering him permanently retarded. The social services agency that monitored Joshua's case for over two years prior to this catastrophic beating did nothing except to dutifully record numerous "suspicious injuries" in its files. *Id.* at 193, 109 S.Ct. at 1002. The Supreme Court rejected Joshua's Section 1983 claim, stating:

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraints of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. at 1006.

■ *DeShaney* was applied by the First Circuit in *Monahan v. Dorchester Counsel-*

*ing Center, Inc.*, 961 F.2d 987 (1992). Monahan was a voluntary mental patient in a state facility who alleged that workers at the facility had intentionally and/or with reckless indifference transported him in a van without restraints, even though they knew he had a propensity to jump out of motor vehicles. *Id.* at 989, 992–93. Monahan was hit by a car after jumping from the van and was severely injured. *Id.* at 989. The First Circuit rejected Monahan's Section 1983 claim, holding that "[t]he state not having restrained Monahan 'against his will,' the Constitution did not impose upon it any responsibility for his safety and well-being." *Id.* at 992 (quoting *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005–1006). The Court of Appeals noted that Monahan's "mental condition may have made him functionally dependent on his caretakers," but "his helplessness was not attributable to the state's having taken him into custody involuntarily." *Monahan*, 961 F.2d at 992. Plaintiff would argue that the instant case is distinguishable from *Monahan* in that his injuries were more directly caused by a state actor. However, the concern in *DeShaney* and *Monahan* is not directness of the state action but involuntary restraint: a Section 1983 plaintiff who alleges failure to adequately safeguard his well-being must show that the State affirmatively acted to restrain his personal liberty and that such action is responsible for his state of helplessness in order to make out a substantive due process claim.

Neither the plaintiff nor his mother were in the San Juan Municipal Hospital against their will through some affirmative act of the state. Rather, Mrs. Frances Colón voluntarily sought out the Hospital's services and requested to be admitted there for medical treatment. That once admitted she became dependent upon the state's doctors because of her medical circumstances is insufficient to trigger the protections of the Due Process Clause since the state doctors did not cause her helplessness by restraining her liberty. *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1006; *Monahan*, 961 F.2d at 992.

Neither can plaintiff prevail by showing state conduct that "shocks the conscience." This case involves a woman who voluntarily sought the services of a public hospital and who may or may not have received substandard medical care. If plaintiff's allegations are true, defendants may have been negligent or even grossly negligent in failing to heed Mrs. Frances Colón's admonition that her baby was to be delivered by caesarean section and/or in failing to conduct tests that would have indicated whether she was capable of giving birth vaginally. However unfortunate the outcome of defendants' alleged acts, we are not speaking here of conduct so egregious that it offends even "hardened sensibilities." *See Rochin*, 342 U.S. at 172, 72 S.Ct. at 210.

■ The United States Supreme Court has long insisted that not every tort committed by a state actor is a constitutional violation. *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006 (citing Supreme Court precedents). The United States Constitution and traditional tort law quite simply do not address the same concerns. *See Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). Section 1983 was originally enacted as § 1 of the Ku Klux Act of April 20, 1871, entitled "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes." *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961) (quoting 17 Stat 13); *overruled by Monell*, 436 U.S. at 663, 98 S.Ct. at 2022 (local governments not wholly immune from suit under Section 1983). The Due Process Clause of the Fourteenth Amendment protects the individual against arbitrary state action and prevents governmental power from being used for purposes of oppression. *Daniels*, 474 U.S. at 331–32, 106 S.Ct. at 665 (quoting Supreme Court's discussion of the Due Process Clause of Fifth Amendment in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 277, 15 L.Ed. 372 (1855)). Section 1983 was enacted during a period of extreme civil unrest and lawlessness in the South. *Monroe*, 365 U.S. at 174, 81 S.Ct. at 477. State agents afforded no effective redress and became passive or active implements of the prevailing oppression. *See Monroe*, 365 U.S. at 175–176, 81 S.Ct. at 478 (quoting congressional debates, Cong.Globe, 42d Cong, 1st Sess.

(1871)). Section 1983 was enacted to eradicate such oppression.

Since the focus of the Due Process Clause is prevention of the arbitrary and oppressive use of state power, it historically has been applied to "deliberate decisions of government officials to deprive a person of life, liberty, or property." *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665. Negligence, the touchstone of tort law, "suggests no more than a failure to measure up to the conduct of a reasonable person" and is "quite remote from the concerns just discussed." *Daniels*, 474 U.S. at 332, 106 S.Ct. at 665. The defendant doctors in the instant case deliberately decided not to deliver plaintiff by caesarean section. However their deliberation centered on selecting a medical procedure, not on depriving plaintiff of his constitutional rights. *See Germany v. Vance*, 868 F.2d 9, 18 n. 11 (1st Cir.1989) (omissions can be deliberate in the sense of being consciously intended rather than purely inadvertent). "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Daniels*, 474 U.S. at 332, 106 S.Ct. at 665.

Since plaintiff has failed to identify a protected liberty interest and has failed to show that defendants acted with the requisite degree of culpability, his Section 1983 claim must be dismissed as to all defendants.

## V. NEGLIGENCE ACTION PURSUANT TO PUERTO RICO LAW

Plaintiff also claims a cause of action under Puerto Rico law for defendants' actions. Defendant doctors claim immunity pursuant to P.R.Laws Ann. tit. 26, § 4105 (1989), which provides in pertinent part:

> No health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his profession while said health service professional acts in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities.

Plaintiff maintains that under *Flores Román v. Ramos González*, 90 J.T.S. 132, 127 P.R.Dec. —— (1990), the defendant doctors are not immune if they acted with such recklessness and indifference as would demonstrate a failure to exercise professional judgment. Plaintiff claims further that even if the doctors are immune, he should be entitled to recover from their insurers. Plaintiff also argues that failure to notify the Municipality of his claim within ninety days of knowledge of his damages is not fatal since defendants have not been prejudiced thereby.

Under *Flores Román*, a person must meet three requirements to acquire immunity under § 4105: i) he must be a health care professional; 2) the harm caused by his malpractice must have taken place in the practice of his profession; and 3) he must have acted in compliance with his duties and functions as an employee of the Commonwealth of Puerto Rico, its agencies, instrumentalities, and municipalities. 90 J.T.S. 132 at 8243, 127 P.R.Dec. at ——. Plaintiff claims that evidence that the doctors acted recklessly, indifferently, or in a way that shocks the conscience, would prove that they did not act in the practice of their profession nor in compliance with their duties and functions as employees of the Commonwealth. The Court has uncovered no support for plaintiff's contention and finds as a matter of law that the doctors delivered plaintiff in the practice of their profession and while acting in compliance with their duties and functions as employees of the San Juan Municipal Hospital. Accordingly, they are immune from liability pursuant to § 4105.

As to the liability of the doctors' insurers, plaintiff contends that Opinion No. 1987–16, issued by the Commonwealth's Secretary of Justice, is a legislative overruling of the Puerto Rico Supreme Court's decision in *Lind Rodríguez v. Commonwealth*, 112 P.R.Dec. 67 (1982). Plaintiff urges the Court to apply this "legislative overruling" to the instant case. The Supreme Court of Puerto Rico held in *Lind* that the immunity afforded state doctors is not a personal defense but rather the "inexistence of a cause of action" and that where no cause of action lies against the insured, the insurer is not liable. *Id.* at 69.

An opinion of the Secretary of Justice can hardly overrule a Puerto Rico Supreme Court precedent. The Secretary of Justice is a member of the executive branch, not the legislative, and issuance of an advisory opinion is an administrative act, not legislative. The cited opinion of the Secretary involves § 4105, enacted in 1986, while the decision in *Lind* interpreted § 4108, the predecessor to § 4105. However, the language of § 4105 is quite similar to that of § 4108.[2] For this reason, the Secretary acknowledges in the advisory opinion that existing jurisprudence is still good law. The Secretary goes on to conclude that *Lind* is inapplicable to part-time health professionals who are required to include the Department of Health in their policies since the Department of Health is not immune from suit under Section 4105. The Secretary is not "overruling" *Lind,* but rather determining that it is a valid precedent that has no application to the facts before him. Since Opinion No. 1987–16 involves insurance policies that include the Department of Health, it has no bearing on the instant case. *Lind* is dispositive and requires that the doctors' insurers also be held immune from suit. *See also Rodríguez Díaz v. Sierra Martínez,* 717 F.Supp. 27, 33 (D.P.R.1989) (claim against insurer of doctor must be dismissed where doctor is immune pursuant to § 4105, citing *Lind* ).

There remains plaintiff's claim against the Municipality of San Juan. Defendants allege

such claim is barred by plaintiff's failure to notify the Municipality within ninety days of learning of his damages. Plaintiff cites to numerous cases in which the Supreme Court of Puerto Rico held that failure to comply with the notice requirement did not bar prosecution of a claim. Plaintiff argues that his claim should be allowed to proceed since defendants have not shown that they were prejudiced by the lack of notice.

Puerto Rico's municipal notification requirement was first established by Article 96 of the Municipal Law, L. No. 142 of July 21, 1960 (codified as P.R.Laws Ann. tit. 21, § 1603); it was preserved with minor changes in Article 11.03 of the Organic Act of the Municipalities of Puerto Rico, L. No. 146 of June 18, 1980 (codified as P.R.Laws Ann. tit. 21, § 3403), and continues in force as Article 15.003 of the Autonomous Municipalities Act of the Commonwealth of Puerto Rico, L. No. 81 of August 30, 1991 (codified as P.R.Laws Ann. tit. 21, § 4703). All versions of the notification statute require a plaintiff to notify the Mayor in writing of a claim within ninety days following the date on which the claimant learns of his damages. In the case of a minor, the person exercising *patria potestas* or having custody of the minor, or his guardian, is obliged to effectuate the notice within 90 days of the date on which he/she learned of the damages claimed. P.R.Laws Ann. tit. 21, § 4703(a).[3] This mu-

---

**2.** Section 4108, enacted as Article 41.080 of the Puerto Rico Insurance Code, L. No. 74 of May 30, 1976, read:

No health care professional who works exclusively for the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities may be included as defendant party in a complaint for damages for malpractice caused in the discharge of his profession while he acts in compliance with his duties and functions as employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities.

The Insurance Code was amended by L. No. 4 of December 30, 1986. The immunity originally afforded under Section 4108 was retained in Article 41.050 of the amended Code, which states:

No health service professional may be included as a defendant in a civil suit for damages due to malpractice caused in the performance of his profession while said health service professional acts in compliance with his duties and

functions as an employee of the Commonwealth of Puerto Rico, its dependencies, instrumentalities and municipalities.

**3.** Section 4703 provides in pertinent part:

Any person who has a claim of any kind against a municipality for personal or property damages due to the fault or negligence of the municipality shall so notify the Mayor, in writing, stating clearly and concisely the date, place, cause and general nature of the damages suffered. Said notification shall specify the amount of monetary compensation or the kind of relief appropriate for the damages suffered, the names and addresses of his/her witnesses, the claimant's address and, in cases of personal damages, the place where medical treatment was first received.

. . . . .

If the injured party is a minor or a ward, the person exercising *patria potestas* or the custody of the minor, or the guardian, as the case may be, shall be obliged to notify the Mayor of the

nicipal notification provision was most recently construed by the Puerto Rico Supreme Court in 1993 in *López v. Autoridad de Carreteras de Puerto Rico,* 93 J.T.S. 64, 134 P.R.Dec. —— (1993). The Supreme Court reviewed extensively in *López* its jurisprudence relating to the municipal notification provision.

The Court began its review with *Mangual v. Tribunal Superior,* 88 P.R.Dec. 491 (1963), in which the Court resolved that notification is a strict condition precedent for suing a municipality. The Court noted in *Mangual* that the purposes of the law were: to grant municipalities the opportunity to investigate claims; to discourage groundless claims; to permit settlement; to permit inspection of the physical location of accidents; to discover the names of witnesses and to interview them while their memories were still reliable; to notify authorities of claims so they could budget for them; and to mitigate damages by offering free medical services to plaintiffs. *Id.* at 494. In subsequent cases, the Court held that the notice provision was inapplicable in variety of situations, *see García v. Northern Assurance Co.,* 92 P.R.Dec. 245 (1965) (notice provision doesn't apply to municipality's insurance company); *Rosario v. Municipio de Ponce,* 92 P.R.Dec. 586 (1965) (no application to breach of contract claims); *Ins. Co. of P.R. v. Ruiz,* 96 P.R.Dec. 175 (1968) (no notice required for mandatory counterclaim filed against a municipality); *Díaz v. Municipio de Cayey,* 99 P.R.Dec. 196 (1970) (inapplicable to constitutional claim for just compensation for private property taken by eminent domain); *Passalacqua v. Municipio de San Juan,* 116 P.R.Dec. 618 (1985) (separate notice not required where lawsuit is filed and process is served within ninety days). However, the *López* Court stressed that its decisions in these cases were not based on the belief that the provision lacked force or because the requirement was unreasonable or so restrictive of plaintiffs' rights that it should be disregarded. Rather the purposes of the law were simply not implicated in the situations presented in these cases.

*López,* 93 J.T.S. 64 at 10657–58, 134 P.R.Dec. at ——. For example, if a municipality sues to recover damages, the defendant should not be barred from bringing a mandatory counterclaim because he failed to comply with the notice requirement. The municipality is presumably well aware of the incident underlying its claim.

In contrast, the Supreme Court found that the facts in *López* reflected precisely the situation to which the notice requirement was directed. López fell on August 21, 1991, at the intersection of Ashford and Condado. Ms. López filed a complaint on November 21, 1991, against the Highway Authority and the Department of Transportation and Public Works. During discovery, the Highway Authority raised as a defense that the place where the accident occurred was under the jurisdiction of the Municipality of San Juan. Ms. López promptly proceeded to notify the municipality but was already outside the ninety-day notification period. The Supreme Court stated that this situation was precisely that which legislators had in mind when they developed the notification scheme. It dealt with: i) an extracontractual claim for damages; ii) based on the municipality's alleged fault or negligence; iii) initiated by the claimant; iv) directly against the municipality; v) in which the municipality has no way of knowing the essential details of the damage claim absent notification by the plaintiff. *López,* 93 J.T.S. 64 at 10658, 134 P.R.Dec. at ——; *see also Santiago v. U.S.,* 884 F.Supp. 45 (D.P.R.1995) (U.S. Government may not implead Municipality of San Juan where it failed to notify Municipality within ninety days of learning of damages, citing *López* ).

■ *López* reveals the fallacy of plaintiff's contention that the Supreme Court of Puerto Rico has construed the municipal notification provision to apply only when the municipality can show that it is prejudiced by lack of notice. Rather, the Supreme Court has held that notice is not required in specific situations that do not implicate the purposes of the legislative scheme. The instant case

claim within ninety (90) days of the date on which he/she learned of the damages claimed. The above shall not be an obstacle to the minor or ward's making said notification on their own initiative within the specified term, if the person exercising *patria potestas,* or custody or guardianship fails to do so.

does not involve any of the specific situations in which the Supreme Court of Puerto Rico has exempted plaintiffs from the notice requirement. Therefore, we are required to dismiss plaintiff's claim against the Municipality of San Juan for failure to comply with P.R.Laws Ann. tit. 21, § 4703.

## VI. CONCLUSION

▮ Plaintiff's attempts to characterize the defendants' conduct as something more sinister than medical malpractice are without avail. Section 1983 was not intended to provide redress for routine medical malpractice cases involving state doctors. Plaintiff's claims under Puerto Rico law cannot prosper because the defendant doctors are immune from suit and because his parents failed to notify the Municipality of San Juan within ninety days of learning of plaintiff's damages. Therefore, the Court will enter a judgment dismissing with prejudice plaintiff's Complaint.

IT IS SO ORDERED.