**Dr. P.M. Court SIFRE, Plaintiff,**

v.

**Alfonso ROBLES, et al., Defendants.**

Civil No. 92–2649(JP).

United States District Court
D. Puerto Rico.

Feb. 28, 1996.

Dr. Peter M. Court Sifre Guaynabo, P.R., Pro Se.

Fidel A. Sevillano del Rio, Assistant United States Attorney, Hato Rey, P.R., for Defendants.

### OPINION AND ORDER

PIERAS, District Judge.

Plaintiff, Dr. P.M. Court Sifre brought this action for declaratory judgment stating that he should be legally authorized to import certain "smart drugs" designed to improve intelligence, memory, and learning ability into the United States. Jurisdiction for this cause of action lies with the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, which permits an individual to bring an actual controversy to a district court for a declaration of rights.

Before the Court is defendants' motion to dismiss, or for summary judgment alleging that plaintiffs' claims lack subject matter jurisdiction, lack personal jurisdiction, improper service, failure to state a claim upon which relief can be granted, and failure to join the Food and Drug Administration ("FDA"), as an indispensable party (docket No. 20). Plaintiff has opposed defendant's motion, and defendant has replied to plaintiff's opposition (docket Nos. 24, 29, and 32). For the following reasons, defendants' motion is hereby **GRANTED.**

### I. UNDISPUTED FACTS

The parties agree that there are no genuine questions of material fact involved in the case at bar. *See* Initial Scheduling Conference Call (docket No. 18). On July 1992, plaintiff ordered certain drugs from Masters Marketing Co., Ltd. of London, England. The shipment included drugs described as Striadyne Forte; Adrafinil—Olmifon; Lucidril; Cantor and Nootropyl. The drugs were detained at Customs upon entry into the United States on or about August 20, 1992. Plaintiff is not a medical doctor, nor a physician, nor does he hold a license to practice the healing sciences.

On August 14, 1992, the FDA issued a Notice of Detention to plaintiff, giving him notice and opportunity to be heard regarding the validity of the importation of these drugs (Exhibit No. 3, docket No. 20). Furthermore, the letter states the drugs could be released if plaintiff provided the FDA with the address of the physician's supervising plaintiff's use of the drugs. On August 20, 1992, plaintiff wrote a claims letter to Ms. Stephanie R. Gray, District Director of the FDA, San Juan, Puerto Rico (Exhibit No. 2, docket No. 20). On September 14, 1992, FDA responded to the letter, refusing the request to admit the drugs into the United States (Exhibit No. 6, docket No. 20). Mr. Harold Davis, a Consumer Safety Officer, upheld the District Office's decision on No-

vember 4, 1992. Upon their entrance into the United States, Customs seized the drugs pursuant to 19 U.S.C. § 1595(a), and they were destroyed on or about September 1992. On October 15, 1992, the Fines, Penalties and Forfeiture Officer of the United States Customs wrote plaintiff a letter, officially informing him of the seizure of the drugs, and that he could either assent to the administrative forfeiture of the drugs, or contest the decision.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff asserts that he should be legally permitted to import a three-month supply of Striadyne Forte, Nootropyl, Cantor, Lucidril and Olmifon into the United States for his own personal use. Therefore, he has filed a complaint for declaratory judgment against the Director of the Department of the Treasury as the individual who is responsible for the implementation of the Food Drug and Cosmetic Act, ("FDCA") 21 U.S.C. § 301, et seq., and the applicable regulations of the FDA.

## III. DEFENDANTS' ALLEGATIONS

Defendants assert that plaintiff's complaint must be dismissed. First, defendants contend that plaintiff had no right to import these drugs because the FDA had not approved the importation of these drugs into the United States. Moreover, the FDA denied plaintiff's specific request to import the drugs under the "personal use policy". Defendants contend that this decision is only subject to judicial review pursuant to the Administrative Procedure Act, to determine whether the agency acted in an arbitrary and capricious manner, since it is a discretionary function of the FDA to permit specific individuals to import drugs under this policy.

## IV. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Libertad v. Welch,* 53 F.3d 428, 433 (1st Cir.1995); *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.,* 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

## V. DECLARATORY JUDGMENT

Plaintiff moves this Court for a judgment declaring his rights to import the memory and intelligence enhancement drugs pursuant to the Declaratory Judgement Act, 21 U.S.C. §§ 2201 and 2202. Plaintiff has already attempted to import into the United States these drugs, and has been informed by the FDA that the importation of these drugs is in violation of the FDCA. Defendants recharacterize plaintiff's cause of action as one for a mandatory injunction against the FDA and the U.S. Customs of the Department of Treasury preventing them from enforcing the provisions of the statute which authorize these government agencies to seize new drugs imported in violation of the FDCA.

Plaintiff in effect concedes that he attempted to import new drugs which have not been approved for importation by the FDA, and thereby in effect he violated 19 U.S.C. § 1595 which reads "[a]ny merchandise that is introduced or attempted to be introduced into the United States contrary to law ... may be seized and forfeited." 19 U.S.C. § 1595a(c). He argues that he should be allowed to import these new drugs for his personal use, pursuant to the FDA's personal use exception to the ban on unapproved new drugs, RPM Chapter 9–71 in 1989.

■ The Declaratory Judgment Act is merely a procedural mechanism through which parties can resolve real cases and controversies. It does not, however, create any substantive right. Plaintiff asserts two legal basis for substantive rights. First, plaintiff urges the Court to order various government officials to allow him to import the "smart drugs" pursuant to 28 U.S.C. § 1361. Section 1361 reads as follows:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

A writ of mandamus is an extraordinary remedy which should only be used in rare circumstances when the government has entered into a clear agreement regarding a non-discretionary duty. Plaintiff has not asserted that any of the government officials had a non-discretionary duty to allow him to import these drugs. Therefore, plaintiff has no right to a writ of mandamus.

Second, plaintiff argues that the Customs's official and the FDA violated provision of the Administrative Procedures Act. The Administrative Procedures Act provides judicial review to determine whether the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Therefore, the only issue before this Court is whether the Customs' official or the FDA acted arbitrarily and capriciously when they seized the drugs, and refused to allow plaintiff to import the drugs under the personal use policy.

## VI. DISCUSSION

■ Under the FDCA, new drugs may not be imported into the United States without receiving permission from the FDA prior to importation. 21 U.S.C. § 355. A new drug is one whose composition is not generally recognized by experts qualified by scientific training and experience, as being safe and effective. In order for a new drug to receive approval, an individual must file a new drug application ("NDA") or an abbreviated new drug application ("ANDA") pursuant to § 355(505)(b) and (j). The FDA never approved the importation of the drugs Striadyne, Nootropyl, Cantor, Lucidril and Olmifon, which plaintiff wishes to import.

■ The FDA has an informal policy permitting the importation of new drugs which are not approved by the FDA for general public consumption if limited to personal use. This "personal use importation policy" balances two conflicting principles by recognizing that the drugs which are not generally safe and effective should not be consumed by the general public. Nevertheless, certain individuals may have overriding needs to have access to those particular drugs. For instance, Customs has permitted the importation of new drugs not approved for general consumption for individuals suffering from AIDS and terminal cancer. In order to receive permission from the FDA to import under this exception to the general

rule, an individual must meet the following criteria:

1) the intended use is unapproved and for a serious condition for which effective treatment may not be available domestically either through commercial or clinical means;

2) there is no known commercialization or promotion to persons residing in the United States by those involved in the distribution of the product at issue;

3) the product is considered not to represent an unreasonable risk; and

4) the individual seeking to import the product affirms in writing that it is for the patient's own use (generally not more than a three month supply) and provides the name and address of the doctor licensed in the United States responsible for his or her treatment with the product or provides evidence that the product is for the continuation of treatment begun in a foreign country. (Exhibit No. 7, docket No. 20).

Even if an individual complies with the preceding four elements, the decision whether to permit an individual to import the drugs remains within the discretion of the FDA.

Based upon the evidence presented by both parties, Customs, acting pursuant to the decision of the FDA, did not abuse its discretionary duties to refuse to apply the personal use policy to plaintiff's smart drugs, and the FDA did not abuse its discretion in denying plaintiff's request to import. It is undisputed that plaintiff did not comply with any of the four criteria listed in FDA's policy on personal use exception which would permit Customs to allow plaintiff to import the drugs, despite their lack of FDA approval.

First, "smart drugs" are not necessary for the treatment of a serious condition. Plaintiff argues that they were necessary for the maintenance of his health. It is apparent, however, that the drugs in question are designed to enhance intelligence, memory and learning ability. Thus, the drugs in question, unlike drugs for AIDS and cancer victims, are not designed to prevent life threatening diseases. Second, there was the commercialization of at least one of the drugs, Lucidril, domestically. Therefore, the FDA had issued an "import alert" to prevent the impor-

tation of this particular drug, Import Alert No. 66–27 (Exhibit 8 to defendant's motion for summary judgement, docket No. 20). Third, the FDA determined that the drugs in question were not safe. Although plaintiff states in his letters to the FDA that the drugs had been studied and found to be safe and effective in Europe, the FDA's own research does not concur in that result. The new unapproved drugs as labeled by the manufacturer specifically state that the drugs are for prescription use under the care of a physician. Therefore, the drugs were not readily available to the public even in Europe (Exhibit 5, docket No. 20). Fourth, plaintiff had not found a supervising physician who would recommend the use of these drugs. The drugs themselves specifically state that they should be administered under the supervision of a physician. It is an uncontested fact that plaintiff himself was not a physician who could qualify to supervise the use of the drugs. Plaintiff asserts that no physician would approve his use of these drugs, specifically because the drugs were not approved for importation into the United States. Therefore, it is clear that plaintiff did not meet any of the four requirements.

■ The Customs officials followed statutory and regulatory mandates when they seized the drugs. Plaintiff does not have any vested right, interest or entitlement to the use of a particular medication which has not been approved by the FDA. *See Carnohan v. U.S.,* 616 F.2d 1120, 1122 (9th Cir.1980); *Rutherford v. U.S.,* 616 F.2d 455, 457 (10th Cir.1980). It is well settled that "the government's interest in protecting the health of its citizens often overrides a patient's choice of a particular treatment or medication." *Jacob v. Curt,* 721 F.Supp. 1536, 1539 (D.R.I.1989). In the case at bar, the government's decision that its interest in protecting the citizens from unsafe and ineffective "smart drugs" overrides plaintiff's access to those "smart drugs" through the personal use exception policy of the FDA was not an abuse of discretion.

### VII. CONCLUSION

For the foregoing reasons, the FDA's decision to deny plaintiff's request for importa-

tion under the personal use exception was not arbitrary or capricious. The "smart drugs" were new drugs which had not been approved by FDA as being safe and effective. Plaintiff did not comply with the requirements for the personal use policy. Consequently, defendant's motion for summary judgment is hereby **GRANTED.** Judgement shall be entered accordingly.

IT IS SO ORDERED.